**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| JACK NOEL, | ) |
| Plaintiff, | ) |
| v. | ) No. 4:12-CV-1673 CAS |
| AT&T CORPORATION, et al., | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants AT&T Corporation and SBC Internet Services, Inc.'s ("SBC") motion to dismiss Counts I, II and III of plaintiff Jack Noel's First Amended Complaint, and for judgment on the pleadings as to Count III. Plaintiff opposes the motion and it is fully briefed. For the following reasons, the Court will construe the motion as a motion for judgment on the pleadings, grant it as to Counts I and III, and deny it as to Count II.

**Background**

This action was filed by plaintiff in on June 4, 2012 in the Circuit Court for the City of St. Louis, State of Missouri. Plaintiff's two-count Petition asserted claims for wrongful discharge in against public policy and violation of the Missouri Human Rights Act, §§ 213.010, et seq. Missouri Revised Statutes. Defendant AT&T Corporation removed the case based on diversity of citizenship, 28 U.S.C. § 1332(a), and then filed a motion to dismiss the Petition. Plaintiff sought and was granted leave to file a First Amended Complaint ("Complaint"), which added SBC Internet Services, Inc. as a defendant and added a third count for "Negligence Resulting in Injury." The defendants filed an Answer to the Complaint and then filed the instant motion to dismiss and for judgment on the pleadings.

Plaintiff's Complaint makes the following allegations: Plaintiff was employed by defendant SBC from 1979 until June 6, 2010, in increasingly responsible positions. Plaintiff has diabetes but his diabetes had not been a major health issue for him until 2007, when he began working under a new manager and was given additional responsibilities and required to travel significantly more. The additional responsibilities and travel aggravated the symptoms of plaintiff's diabetes to the extent that he collapsed at the Tulsa, Oklahoma airport in March 2008 and was hospitalized for several weeks thereafter. In 2008, two of plaintiff's treating physicians wrote to plaintiff's supervisor, requesting that his work-related travel be restricted because of its effect on his health, but these requests were ignored. Plaintiff collapsed again in December 2009 because of his diabetes and was hospitalized. Plaintiff requested short term disability but this request was denied, and instead plaintiff was placed on a Performance Improvement Plan ("PIP"), in which he was threatened with termination. Plaintiff was hospitalized again in April 2010 and was "threatened by his supervisor that his termination was impending upon his return to work as a result of his [PIP]." Complaint, ¶ 23. Plaintiff's physician told him that if he continued to maintain his travel schedule, his life would be endangered. As a result, plaintiff tendered his resignation when he returned to work on June 9, 2010. Plaintiff is now fully disabled and requires ongoing treatment for his health condition.

**Legal Standard**

As a threshold matter, the defendants filed their Answer to plaintiff's Amended Complaint, and on the same day filed the instant motion to dismiss Counts I, II and III, and motion for judgment on the pleadings as to Count III.[1] Under Rule 12(b), Fed. R. Civ. P., a motion to dismiss for failure

---

[1] Confusingly, defendants' motion states that it is a motion to dismiss Counts I, II and III, and also a motion for judgment on the pleadings on Count III, while the memorandum in support states

2

to state a claim upon which relief can be granted must be "made before pleading if a responsive pleading is allowed." Rule 12(h)(2)(B) provides, however, that a defense of failure to state a claim upon which relief can be granted may be raised in a motion for judgment on the pleadings under Rule 12(c). The Court will therefore construe defendants' motion to dismiss as a motion under Rule 12(c). See Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

A motion under Rule 12(c) is determined by the same standards that are applied to a motion under Rule 12(b)(6). Ginsburg v. InBev NV/SA, 623 F.3d 1229, 1233 n.3 (8th Cir. 2010). The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A plaintiff need not provide specific facts in support of his allegations, Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam), but "must include sufficient factual information to provide the 'grounds' on which the claim rests, and to raise a right to relief above a speculative level." Schaaf v. Residential Funding Corp., 517 F.3d 544, 549 (8th Cir. 2008) (citing Twombly, 550 U.S. at 555 & n.3). This obligation requires a plaintiff to plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. A complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." Id. at 562 (quoted

---

that defendants move to dismiss Count I and II and move for judgment on the pleadings on Count III. Defendants do not explain why they filed a motion to dismiss Counts I and II and a motion for judgment on the pleadings on Count III.

3

case omitted). This standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the claim or element]." Id. at 556.

On a motion to dismiss, the Court accepts as true all of the factual allegations contained in the complaint, even if it appears that "actual proof of those facts is improbable," id. at 556, and reviews the complaint to determine whether its allegations show that the pleader is entitled to relief. Twombly, 550 U.S. at 555-56; Fed. R. Civ. P. 8(a)(2). The principle that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions, however. Iqbal, 129 S. Ct. at 1949-50 (stating "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"). Although legal conclusions can provide the framework for a complaint, they must be supported by factual allegations. Id. at 1950. Plausibility is assessed by considering only the materials that are "necessarily embraced by the pleadings and exhibits attached to the complaint[.]" Whitney v. Guys, Inc., 700 F.3d 1118, 1128 (8th Cir. 2012) (quoted case omitted). The plausibility of the plaintiff's claim is reviewed "as a whole, not the plausibility of each individual allegation." Zoltek Corp. v. Structural Polymer Grp., 592 F.3d 893, 896 n.4 (8th Cir. 2010).

**Discussion**

    1. Constructive Discharge in Violation of Public Policy - Count I

Under Missouri law, an employee is considered to be "at-will" unless he is subject to a contract setting the duration of his employment or delineating the reasons for which he can be fired. "At-will" employees can be terminated at any time without cause. Margiotta v. Christian Hosp. Northeast Northwest, 315 S.W.3d 342, 346 (Mo. 2010) (en banc). Nonetheless, the "at-will doctrine is limited in certain respects. An employer cannot terminate an at-will employee for being a member of a protected class, such as 'race, color, religion, national origin, sex, ancestry, age or disability.'

4

Section 213.055, RSMo. 2005." Id. at 347.  "In addition, Missouri recognizes the public-policy exception to the at-will-employment rule." Id. (citing Fleshner v. Pepose Vision Institute, P.C., 304 S.W.3d 81, 92 (Mo. 2010) (en banc)).  "The public policy exception to the at-will employment rule, often called the wrongful discharge doctrine, is very narrowly drawn.  An at-will employee may not be terminated for refusing to perform an illegal act or reporting wrongdoing or violations of law to superiors or third parties." Id. (cited cases and footnote omitted).

Constructive discharge can also be the basis for a wrongful discharge in violation of public policy claim.  Bell v. Dynamite Foods, 969 S.W.2d 847, 853 (Mo. Ct. App. 1998).  Under Missouri law, "Constructive discharge occurs when an employer deliberately renders an employee's working conditions so intolerable that the employee is forced to quit his or her job." Wallingsford v. City of Maplewood, 287 S.W.3d 682, 686 (Mo. 2009) (en banc) (quoted case omitted).  "To effect a constructive discharge, the working conditions must be such that a reasonable person would find them intolerable." Id.

Plaintiff was an at-will employee and asserts a claim of wrongful discharge under the public policy exception in Count I.  Defendants move for judgment on Count I on two grounds: (1) that plaintiff fails to state a public policy exception claim because the Complaint does not specifically allege that plaintiff reported a violation of law or public policy (the only possible basis for a public policy claim in this case), and (2) that even if plaintiff had adequately pleaded a public policy claim, it is not available where there is a statutory provision that provides a remedy–in this case the MHRA.

The Court does not address defendants' first contention because it agrees that plaintiff does not have a viable action for wrongful discharge in violation of public policy because he has an independent statutory remedy under the MHRA.

5

This Court has previously held that a plaintiff may not bring an action for wrongful discharge in violation of public policy where he has an available remedy under the MHRA, as the common-law remedy is preempted by the comprehensive remedial scheme of the statute. See, e.g., Banks v. Ameren UE, 2005 WL 2176927, at *4 (E.D. Mo. Sept. 8, 2005); Schneider v. Sullivan Univ., No. 4:01-CV-1237 LMB, slip op. at 20-21 (E.D. Mo. Aug. 4, 2004); Zysk v. Sanford Brown College, Inc., No. 4:01-CV-637 CAS, slip op. at 7-8 (E.D. Mo. Jan. 22, 2002). All of these decisions, however, were issued prior to the Missouri Supreme Court's opinion in Fleshner v. Pepose Vision Institute, P.C., and therefore are not persuasive as to whether Missouri courts would allow a common law cause of action for wrongful termination based upon the public policy codified in the MHRA.

In Fleshner, the Missouri Supreme Court was required to determine whether a wrongful discharge public policy exception action, in which the plaintiff claimed she was fired after she cooperated with a U.S. Department of Labor investigation into whether the defendant was paying its employees overtime, was preempted by the Fair Labor Standards Act. The court stated it "has consistently held that a statutory right of action shall not be deemed to supersede and displace remedies otherwise available at common law in the absence of language to that effect unless the statutory remedy fully comprehends and envelops the remedies provided by common law." Fleshner, 304 S.W.3d at 95 (internal quotation marks and quoted case omitted). Under Missouri law, "A statutory remedy does not 'comprehend and envelop' the common law if the common law remedies provide different remedies from the statutory scheme. For example, if the common law remedy provides punitive damages, but the statutory scheme does not, then the common law scheme is not preempted." Id. at 95-96 (internal citation and quoted case omitted).

6

In Missouri, punitive damages are available for wrongful discharge claims brought under the public policy exception at common law. Id. at 96. Accordingly, to preempt the public policy exception, the MHRA must provide for punitive damages. See id. (discussing Fair Labor Standards Act). The MHRA provides a comprehensive remedial scheme that allows a court to award a plaintiff injunctive relief, actual and punitive damages, costs and attorneys' fees in an action against an employer. § 213.111.2, Mo. Rev. Stat. (2000).[2] Further, because the MHRA allows the recovery of attorneys' fees, it appears to provide plaintiffs with more remedies than the common law, not less, as Missouri generally follows the American Rule which requires litigants to bear their own attorneys' fees unless otherwise authorized by statute. See Holmes v. Kansas City Mo. Bd. of Police Comm'rs, 364 S.W.3d 615, 630 (Mo. Ct. App. 2012). Accordingly, the Court concludes the MHRA's statutory remedies fully "comprehend and envelop" the remedies provided by common law under the test articulated by the Missouri Supreme Court and, as a result, the MHRA preempts plaintiff's public policy exception claim.

Although neither side cited the case, the Court notes that another judge of this Court has held that the MHRA does not preempt a wrongful discharge claim under the Missouri public policy exception. See Shelton v. Village of Bel Nor, 2011 WL 3207123, at *3 (E.D. Mo. July 28, 2011). In reaching this conclusion, Judge Baker cited the Missouri Supreme Court's statement in Fleshner that both the MHRA and the public policy exception modify Missouri's at-will employment doctrine and that wrongful termination claims can be brought under each. Fleshner, 304 S.W.3d at 94-95. Judge Baker concluded from this statement that the Missouri Supreme Court "expressed a position that the public policy exception and the MHRA co-exist" and concluded as a result that "the MHRA

---

[2] All subsequent statutory references are to the Missouri Revised Statutes (2000), unless otherwise stated.

does not preempt a wrongful discharge claim brought under the public policy as set forth in Missouri law." Shelton, 2011 WL 3207123, at *3.

The undersigned respectfully disagrees. The Missouri Supreme Court's discussion of the MHRA and the wrongful discharge public policy exception in Fleshner occurred in the context of its first explicit recognition of the existence of the public policy exception. The issue under discussion was how a jury should be instructed as to the proper causal standard for a wrongful discharge action based on the public policy exception. 304 S.W.3d at 92-94. The defendant argued for an "exclusive causation" standard and the plaintiff argued for a "because" standard. The court discussed the "exclusive causation" standard used in workers' compensation retaliation cases, but rejected it as inappropriate for wrongful discharge public policy exception cases. The court then looked to the MHRA and its "contributing factor" standard as a guidepost because the MHRA, like the public policy exception, is an exception to the at-will employment doctrine with similar underlying purposes. Id. at 94. The Court discussed the similarities between the MHRA and the public policy exception, and ultimately concluded that the proper causal standard would be the same under both:

> Essentially, the MHRA modifies the at-will employment doctrine by instructing employers that they can terminate employees, but their reason for termination cannot be improper. The MHRA's employment provisions mandate that employees may not terminate employees on the basis of their race, color, religion, national origin, sex, ancestry, age, or disability. Section 213.055.1. The public-policy exception is the same: it modifies the at-will employment doctrine by mandating that employers may not terminate employees for reporting violations of law or for refusing to violate the law or public policy.
>
> Likewise, cases involving both the MHRA and the public-policy exception turn on whether an illegal factor played a role in the decision to discharge the employee. The evidence in both types of cases directly relates to the employer's intent or motivation. The employer discharges the employee, asserting a reason for the termination that may or may not be pretextual. Under the MHRA, if race, color, religion, national origin, sex, ancestry, age, or disability of the employee was a

> "contributing factor" to the discharge, then the employer has violated the MHRA. The employer's action is no less reprehensible because that factor was not the only reason. Similarly, if an employee reports violations of law or refuses to violate the law or public policy as described herein, it is a "contributing factor" to the discharge, and the discharge is still reprehensible regardless of any other reasons of the employer.

Fleshner, 304 S.W.3d at 95-96.

This Court reads the foregoing discussion in Fleshner to indicate that while the MHRA and public policy exception are similar in that both are exceptions to the at-will employment rule, where a claim of wrongful discharge is based on race, color, religion, national origin, sex, ancestry, age, or disability, it is governed by the MHRA, and where a claim of wrongful discharge is based on an employee reporting violations of law or refusing to violate the law, it is governed by the public policy exception. The Missouri Supreme Court did not address in Fleshner whether a plaintiff could bring a wrongful discharge action under the public policy exception based on a discharge for one of the reasons prohibited by the MHRA, and the Court does not interpret Fleshner as providing any indication that such an action would be appropriate.

In Fleshner, the Missouri Supreme Court also considered whether the plaintiff's public policy exception claim was preempted by the federal Fair Labor Standards Act. In so doing, the court articulated the analysis that must be applied to a claim of preemption under Missouri law. Id. at 95-96. The court concluded that Fleshner's public policy exception claim was not preempted by the FLSA because the FLSA did not offer all of the remedies that were available to her under the common law, specifically punitive damages. This Court believes the Missouri Supreme Court would apply the same analysis to determine whether the MHRA preempts public policy exception claims based on race, color, religion, national origin, sex, ancestry, age, or disability, and would

9

conclude that it does because the MHRA's comprehensive remedial scheme completely "comprehends and envelops" the common law remedy, as discussed above.

Defendants' motion for judgment on the pleadings on Count I should therefore be granted.

2. <u>Missouri Human Rights Act - Count II</u>

Defendants moves for judgment on Count II, plaintiff's disability discrimination claim under the MHRA, as untimely. Any action filed under the MHRA must be filed "no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party." § 213.111.1, Mo. Rev. Stat. In Missouri, "Statutes of limitations are favored in the law, and cannot be avoided unless the party seeking to do so brings himself strictly within some exception. Such exceptions are strictly construed and are not enlarged by the courts upon considerations of apparent hardship." <u>Hunter v. Hunter</u>, 237 S.W.2d 100, 104 (Mo. 1951) (internal quotation marks and quoted cases omitted).

Under the language of the MHRA's limitation provision, the issue presented by defendants' motion is when the plaintiff's cause of action occurred or was reasonably discovered. Defendants assert that the statute of limitations begins to run on the date an employer communicates an adverse action to the employee, citing <u>Dring v. McDonnell Douglas Corp.</u>, 58 F.3d 1323, 1328 (8th Cir. 1995). Defendants argue that the statute began to run on plaintiff's MHRA claim "in December 2009" based on the Complaint's allegation that plaintiff's supervisor told him his termination "was impending upon his return to work as a result of his performance improvement plan," Complaint, ¶ 23, read in conjunction with the Charge of Discrimination, which asserts that prior to December 18, 2009, plaintiff's manager told him if he did not improve, he would be terminated on December 29, 2009. In support of their argument, defendants rely primarily on <u>Farrow v. St. Francis Medical Center</u>, 2012 WL 2395156 (Mo. Ct. App. June 26, 2012), and <u>Dring</u>.

10

Plaintiff responds that the actual date of his injury is the date he resigned, June 9, 2010, and that his Petition was timely under the statute because it was filed within two years of that date. Plaintiff argues the threat of termination that was hanging over him was speculative, and that defendants cannot point to any actual communication made by them that would serve as a formal notification of termination to begin the accrual of the statute of limitations under the MHRA. Plaintiff asserts that the only notice he had of a potential termination was the existence of the Performance Improvement Plan, which did not specify a date or explicitly refer to a termination, but rather laid out conditions under which he could either improve his performance or face discipline, including termination, if the performance improvement goals were not met. Plaintiff further asserts that defendants' motion does not offer a specific date on which the statute began to accrue because there was no formal notification by defendants of an adverse action under the MHRA. Plaintiff argues that threats of termination do not constitute notice of an adverse action, and that even if defendants had given him a specific date for termination, plaintiff brought about the accrual of this action by the act of tendering his resignation.

Plaintiff does not cite any case law in support of his position, but seeks to distinguish the Dring v. McDonnell Douglas case on which defendants rely, on the grounds that (1) in Dring, the plaintiff was given formal notification of a layoff date to occur in the future, while no such formal notification was given in this case; (2) Dring concerned the 300-day limit for filing an EEOC complaint, not the running of the two-year MHRA statute of limitation; and (3) Dring addressed the issue of equitable modification, which is not an issue in this case.

Defendants reply that the MHRA claim is time barred based on plaintiff's Charge of Discrimination and Complaint, as he knew prior to December 18, 2009 that defendants intended to terminate him, based on his allegations that (1) "prior to December 18, 2009," his manager told him

11

he would be terminated on December 29, 2009 if he did not improve his performance; (2) he did not, in fact, improve his performance; (3) he promptly left work never to return; (4) his supervisor told him "explicitly" that his termination was "impending upon his return to work"; and (5) he then resigned in advance of a termination he knew was coming. Defs.' Reply at 6.

The Court finds it significant that defendants do not cite any MHRA cases decided by Missouri courts in support of their timeliness argument. The Eighth Circuit's Dring case, 58 F.3d 1323, is unpersuasive here because it is both factually and legally distinguishable. Dring is factually distinguishable because there, the plaintiff was given formal notice by his employer that he would be laid off on a specific date in the future. The notice did not state that the layoff was contingent on any potential future acts or occurrences, such as the quality of the plaintiff's performance. The Eighth Circuit stated that in the "context of an [Age Discrimination in Employment] action, our court . . . has . . . held that the limitations period begins to run when the plaintiff receives notice of a termination decision." 58 F.3d at 1328. The Eighth Circuit accordingly found that the statute of limitations began to run on the date McDonnell Douglas gave Mr. Dring the layoff notice. Id.

In contrast, in this case, plaintiff was not given a definite termination decision, but rather a Performance Improvement Plan ("PIP") which stated that termination on December 29, 2009 was a possible outcome if he did not improve his job performance. At the time the PIP was given, the possibility existed that plaintiff's job performance would improve and he would not be terminated. Thus, in contrast to the notice in Dring, plaintiff's possible termination under the PIP was contingent upon future events. Plaintiff does not allege and defendants do not argue that his employment was in fact terminated on December 29, 2009. Defendants cite no authority indicating that Missouri courts would hold the MHRA statute of limitations began to run when plaintiff received a PIP that addressed the possibility, but not the certainty, of his termination if his performance did not improve.

12

Dring is legally distinguishable from the present case because it was decided under standards applicable to a federal Age Discrimination in Employment Act case. Although Mr. Dring also asserted an MHRA age discrimination claim, the Eighth Circuit's timeliness discussion concerned only the EEOC's 300-day rule with respect to the ADEA claim. In 1995, when Dring was decided, the Eighth Circuit routinely applied federal employment discrimination law to cases brought under the MHRA, which it no longer does as a result of differences between the MHRA and federal laws articulated by the Missouri Supreme Court. See, e.g., Wierman v Casey's General Stores, 638 F.3d 984, 1002 (8th Cir. 2011) (citing Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 818-19 (Mo. 2007) (en banc)). Defendants have not cited any Missouri decisions applying Dring to the MHRA statute of limitations, and the Court declines their invitation to do so here.

The Court also finds that defendants' reliance on the Missouri Court of Appeals' decision in Farrow, 2012 WL 2395156, is not persuasive for two reasons. First, Farrow was transferred to the Missouri Supreme Court on October 30, 2012, well prior to the filing of defendants' motion, and is awaiting decision there as Case No. SC92793. "The decision of the court of appeals in a case subsequently transferred [to the Missouri Supreme Court] is of no precedential effect." Philmon v. Baum, 865 S.W.2d 771, 774 (Mo. Ct. App. 1993); Benton House, LLC v. Cook & Younts Ins., Inc., 249 S.W.3d 878, 883 (Mo. Ct. App. 2008) (quoting Philmon). Defendants' counsel should have informed the Court that the opinion on which they rely had been effectively vacated.

Second, even if Farrow were a final decision with precedential effect, it concerned a different statute of limitations with different accrual language. Farrow addressed whether the plaintiff's common-law defamation claim was time barred. Section 516.140, Mo. Rev. Stat., provides that defamation claims are subject to a two-year statute of limitations. Section 516.100, Mo. Rev. Stat., further provides that:

13

> Civil actions, other than those for the recovery of real property, can only be commenced within the periods prescribed in the following sections, after the causes of action shall have accrued; provided, that for the purposes of sections 516.100 to 516.370, the cause of action shall not be deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment, and, if more than one item of damage, then the last item, so that all resulting damage may be recovered, and full and complete relief obtained.

Farrow, 2012 WL 2395156, at *10. Under this statute, the court stated that a claim for defamation accrued when it was "capable of being ascertained by a reasonable person using reasonable diligence," and that this test "is met when the plaintiff's right to sue arises and they could have first maintained the action successfully." Id. (citations omitted).

Based on these principles, the Missouri Court of Appeals concluded that plaintiff Farrow objectively should have known that she suffered damages as a result of the alleged defamation well prior to the time her employment was terminated, and that her damages were ascertainable at least as early as 2006 and 2007 when she filed complaints about the alleged defamatory statements with the defendant's personnel. The court rejected Farrow's contention that her termination from employment in 2008 extended the commencement of the running of the statute of limitations beyond the time she first discovered the alleged comments and ascertained their resulting damage to her. Id. at **10, 11.

In contrast, the MHRA statute of limitations provides: "Any action brought in court under this section shall be filed . . . no later than two years <u>after the alleged cause occurred or its reasonable discovery by the alleged injured party</u>." § 213.111.1, Mo. Rev. Stat. (emphasis added). This language is significantly different from that of § 516.100, which states that the cause of action is "not . . . deemed to accrue when the wrong is done or the technical breach of contract or duty occurs, but when the damage resulting therefrom is sustained and is capable of ascertainment."

Defendants have not cited any Missouri authority for the proposition that cases interpreting § 516.100's "capable of ascertainment" standard are authoritative in interpreting § 213.111.1's "cause occurred" or "reasonable discovery" standard. Based on the differences in the relevant statutory language, the Court declines to accept such authority as persuasive here in the first instance. Further, even if the "capable of ascertainment" standard were applicable here, which it is not, it does not appear that plaintiff's right to sue arose and he could have first successfully maintained a cause of action for wrongful termination in December 2009, while he was still employed by the defendants.

For these reasons, the Court concludes that defendants' motion for judgment on plaintiff's MHRA claim as time barred should be denied.

    3. <u>Negligence Resulting in Injury - Count III</u>

In Count III of the Complaint, plaintiff alleges that (1) defendants owed him a duty of care as his employer, (2) putting him under the stress of travel to the extent it affected his health was in dereliction of that duty, and (3) plaintiff was injured as a result. Defendants move for judgment on the pleadings on Count III on the basis that the Missouri Workers' Compensation Act and Missouri Division of Workers' Compensation provide the exclusive remedy and venue for the work-related injuries plaintiff alleges, citing <u>Burns v. Smith</u>, 214 S.W.3d 335, 337 (Mo. 2007) (en banc).

Plaintiff responds that while the Missouri Workers' Compensation Act is typically the exclusive remedy for injuries sustained by employees, there is an exception for negligent acts that is determined on a case-by-case basis and applies here, also citing <u>Burns</u>, <u>id.</u> at 338. Defendants reply that plaintiff's citation to <u>Burns</u> fails to recognize that the court in <u>Burns</u> was determining the circumstances under which a plaintiff might be permitted to bring a negligence claim against an individual co-worker or supervisor and not, as here, an employer.

15

The defendants' motion for judgment on the pleadings is well taken as to Count III. The Missouri Workers' Compensation Law provides the exclusive remedy against employers for injuries covered by its provisions. Burns, 214 S.W.3d at 337. Section 287.120, Mo. Rev. Stat., provides:

> 1. Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident arising out of and in the course of his employment, and shall be released from all other liability therefor whatsoever, whether to the employee or any other person. The term "accident" as used in this section shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person.
>
> 2. The rights and remedies herein granted to an employee shall exclude all other rights and remedies of the employee, his wife, her husband, parents, personal representatives, dependents, heirs or next kin, at common law or otherwise, on account of such accidental injury or death, except such rights and remedies as are not provided for by this chapter.

§ 287.120, Mo. Rev. Stat. Pursuant to this statute, "The employer has a nondelegable duty to provide a reasonably safe place to work. Suits for breach of this duty are excluded by the workers' compensation law." Kelley v. DeKalb Energy Co., 865 S.W.2d 670, 672 (Mo. 1993) (en banc) (internal citations omitted). Plaintiff's negligence claim in Count III is barred by the exclusive remedy of the Workers' Compensation Act. Defendants' motion for judgment on the pleadings on Count III should therefore be granted.

**Conclusion**

For the foregoing reasons, the Court finds that defendants' motion to dismiss, construed as a motion for judgment on the pleadings, should be granted as to Count I based on MHRA preemption, granted as to Count III based on the exclusive remedy of the Missouri Workers' Compensation Act, and denied as to Count II.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion to dismiss, construed as a motion for judgment on the pleadings, is **GRANTED in part** and **DENIED in part**; the motion is **GRANTED** as to plaintiff's wrongful discharge in violation of public policy claim in Count I, **GRANTED** as to plaintiff's negligence claim in Count III, and **DENIED** as to the MHRA claim in Count II. [Doc. 28]

An appropriate partial judgment will accompany this Memorandum and Order.

                                                      *Charles A. Shaw*
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  27th  day of March, 2013.