**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JACK NOEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:12-CV-1673 CAS |
| | ) | |
| AT&T CORP., et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion for summary judgment filed by defendants AT&T Corp. ("AT&T") and SBC Internet Services, Inc.'s ("SBC") on the remaining claim of plaintiff Jack Noel for discriminatory discharge because of his disability, in violation of the Missouri Human Rights Act ("MHRA"), §§ 213.010, et seq., Missouri Revised Statutes (2000). Plaintiff opposes the motion and it is fully briefed. For the following reasons, the Court will grant the motion.

## I.  Background

Plaintiff filed this action in June 2012 in the Circuit Court for the City of St. Louis, State of Missouri. Plaintiff's two-count Petition asserted claims for wrongful discharge as against public policy and in violation of the MHRA. Defendant AT&T (sued as "AT&T Corporation"), removed the case based on diversity of citizenship, 28 U.S.C. § 1332(a), and filed a motion to dismiss. Plaintiff was granted leave to file a First Amended Complaint ("Complaint"), which changed defendant AT&T's name to "AT&T Corp.," added defendant SBC, and added a third count titled "Negligence Resulting in Injury."

The defendants filed an Answer to the Complaint and then a motion to dismiss and for judgment on the pleadings. Construing the defendants' motion as one solely for judgment on the pleadings, the Court dismissed plaintiff's claims for discharge in violation of public policy in Count I and for negligence resulting in injury in Count III. See Mem. and Order of Mar. 27, 2013 (Doc. 35).

## II. Summary Judgment Standard

The en banc Eighth Circuit recently clarified the appropriate standard for consideration of motions for summary judgment, including those filed in employment discrimination cases, explaining as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc) (internal citations and quotation marks omitted).

"Although the burden of demonstrating the absence of any genuine issue of material fact rests on the movant, a nonmovant may not rest upon mere denials or allegations, but must instead

set forth specific facts sufficient to raise a genuine issue for trial." Wingate v. Gage Cnty. Sch. Dist., No. 34, 528 F.3d 1074, 1078-79 (8th Cir. 2008).

To show that disputed facts are material, "the party opposing summary judgment must cite to the relevant substantive law in identifying 'facts that might affect the outcome of the suit'" and then "categorize the factual disputes in relation to the legal elements" of his claim. Quinn v. St. Louis County, 653 F.3d 745, 751-52 (8th Cir. 2011). Thus, to survive a motion for summary judgment, the nonmoving party must "explain the legal significance of [his] factual allegations beyond mere conclusory statements importing the appropriate terms of art" and provide a "meaningful legal analysis explaining how, under the applicable law, the disputed facts might prove [his] claim at trial." Id. at 752 (internal citations omitted).

"To establish a genuine factual issue, a party 'may not merely point to unsupported self-serving allegations.' Anda v. Wickes Furniture Co., 517 F.3d 526, 531 (8th Cir. 2008) (internal quotation and citation omitted). 'Instead, the [party] must substantiate [its] allegations with sufficient probative evidence that would permit a finding in [its] favor.' Id. (internal quotation and citation omitted)." Residential Funding Co., LLC v. Terrace Mortg. Co., 725 F.3d 910, 915 (8th Cir. 2013).

## III. Findings of Fact

This Court's Local Rule 4.01(E) provides with respect to summary judgment motions:

> A memorandum in support of a motion for summary judgment shall have attached a statement of uncontroverted material facts, set forth in a separately numbered paragraph for each fact, indicating whether each fact is established by the record, and, if so, the appropriate citations. Every memorandum in opposition shall include a statement of material facts as to which the party contends a genuine dispute exists. Those matters in dispute shall be set forth with specific references to portions of the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from movant's listing of facts. All matters set forth in the statement of the movant shall be deemed

admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

The "concision and specificity required" by rules such as Local Rule 4.01(E) "seek to aid the district court in passing upon a motion for summary judgment, reflecting the aphorism that it is the parties who know the case better than the judge." Libel v. Adventure Lands of America, Inc., 482 F.3d 1028, 1032 (8th Cir. 2007) (cited case omitted). This type of local rule "exists to prevent a district court from engaging in the proverbial search for a needle in the haystack. Courts have neither the duty nor the time to investigate the record in search of an unidentified genuine issue of material fact to support a claim or a defense." Id. (internal quotation and citation omitted).

With the foregoing standards in mind, the Court finds the following facts for purposes of summary judgment:

1. Up until June 10, 2010, plaintiff Jack Noel was employed by SBC (Plaintiff's Deposition ("Pl. Dep.") at 36; First Am. Compl. ¶ 5).

2. SBC is not a subsidiary of defendant AT&T Corp. (AT&T Corp.'s Corporation Interests Certificate (Doc. 4); SBC's Corporation Interests Certificate (Doc 5)).

3. In 2006, SBC started a new business venture building video headend offices ("VHOs") for AT&T U-verse television. VHOs are essentially television stations, and SBC built fifty-nine of them between 2006 and 2009 all around the United States (Pl. Dep. 45, 47, 54-56; Deposition of Chris Cooley ("Cooley Dep."), at 10-11).

4. VHOs receive programming from networks and then rebroadcast those programs to U-verse customers (Pl. Dep. 45, 54-56).

5.   As part of this new venture, SBC created a first-level manager position called a Video Field Support Engineer ("VFSE") (Pl. Dep. 65; Cooley Dep. 11).

6.   SBC hired four to six VFSEs around the country, including plaintiff, who was the only VFSE based in St. Louis (Pl. Dep. 46-47, 54; Cooley Dep. 9-10).

7.   Chris Cooley managed the VFSEs remotely from San Antonio, Texas, and only met plaintiff face-to-face on one occasion (Cooley Dep. 11-12).  Cooley is no longer employed by SBC (Cooley Dep. 4).

8.   After a VHO was built but before it could open, a VFSE had to travel to the VHO and provide approximately four weeks of training to the employees on how to run, maintain, and monitor the VHO.  Those employees could not start their work at the VHO without receiving the training (Pl. Dep. 45-46, 56-57, 66; Cooley Dep. 10, 19, 39-40).[1]

9.   In addition to training, VFSEs had to do inventory and inspections at the VHOs (Pl. Dep. 54-55; Cooley Dep. 39-40).

---

[1]Plaintiff responded to defendants' Statement of Uncontroverted Material Fact ("SOF") No. 7 (Finding of Fact ¶ 8) by stating:  "Training for VHOs did not necessarily require a continuous on-site presence."  Plaintiff cites to his deposition at pages 45-46 and 56-57.  Testimony at pages 45 and 46 does not support plaintiff's response.  On page 57, expanding on his prior answer that people at new VHOs received four weeks of training, plaintiff stated, "Well, you might have two or three different locations that you have – might do two weeks there, and two weeks at someplace else, and then two weeks back there again.  I mean, we arranged the schedule pretty much on the road constantly, but yeah, they were to get, like, at least – I believe it was four weeks."  Pl. Dep 57, ll. 3-11.  Plaintiff also testified that the people running the VHOs could not start doing their work without the training.  Id., ll. 14-17.  Plaintiff's response and his deposition testimony do not controvert the essential fact asserted by defendants' SOF No. 7, that a VFSE had to travel to a VHO and provide approximately four weeks of training before the VHO could open.  Defendants did not assert that VHO training required a "continuous on-site presence" and, thus, plaintiff's response was non-responsive.  This fact is therefore deemed admitted.

10.  VFSEs had to travel in order to do their job duties (Pl. Dep. 45-46, 56-57, 66-67; Cooley Dep. 19, 27-28).[2]

11.  Plaintiff has diabetes, which he has had for many years (Pl. Dep. 67).

12.  In April 2008, plaintiff apparently collapsed at an airport in Tulsa, Oklahoma, due to his diabetes (Pl. Dep. 74).

13.  On April 18, 2008, Dr. M. Safwat Wahba, M.D., of Psych Care Consultants wrote a letter requesting that plaintiff "be reassigned to a position that requires little or no traveling" (Pl. Dep. 139-43; Ex. A to First Am. Compl.).

14.  On July 14, 2008, Dr. Robert J. Saltman, M.D., of West County Medical Specialists wrote a letter stating he "recommended a position [for Plaintiff] which entails significantly less travel" (Pl. Dep. 143-45; Ex. B to First Am. Compl.).

15.  Plaintiff's manager, Chris Cooley, told plaintiff he could look for another job within the company that required less travel (Pl. Dep. 79; Cooley Dep. 11, 27-30).[3]

---

[2]Plaintiff responded to defendants' SOF No. 9 (Finding of Fact ¶ 10) by stating:  "Only a portion of VFSE job duties required traveling."  This response does not controvert the essential fact asserted by SOF No. 9, that VFSEs were required to travel to perform their job duties.  Plaintiff cites to his deposition at pages 45-46 and 56-57, and Mr. Cooley's deposition at pages 27-28.  Plaintiff's deposition testimony at 45-46 does not support his response.  Plaintiff testified that "we arranged the schedule pretty much on the road constantly," Pl. Dep. 57, ll. 8-9, and Mr. Cooley testified that the VFSE team "was required to travel a significant amount of time.  The travel ranged anywhere from 30 to 39 weeks out of the year.  So [plaintiff] and his peers were all on the road very regularly.  That was a function of the job.  It was something that was required to perform the job."  Cooley Dep. 27-28, ll. 23-25, 1-3.  This fact is deemed admitted.

[3]Plaintiff responded to defendants' SOF No. 14 (Finding of Fact ¶ 15) by stating:  "Plaintiff was told by Cooley that he could not transfer out of the VFSE Group."  Plaintiff cites to page 79 of his deposition, but his testimony supports rather than controverts the essential fact asserted by SOF No. 14.  In response to the question, "Isn't it true that Chris Cooley did tell you that you could look for another job in your Career Path?" plaintiff answered, "Yes."  Pl. Dep. 79, ll. 20-23.  This fact is deemed admitted.

16. Plaintiff told Cooley that he wanted to continue to work as a VFSE (Pl. Dep. 80; Cooley Dep. 29, 41-42, 65-70). Plaintiff also told Cooley on other occasions that he was interested in finding another job within the company. (Cooley Dep. 29, ll. 20-25; 30, ll. 1-13; 33 ll. 19-24; 41 ll. 1-6).

17. Plaintiff knew that as a VFSE, he had to travel (Pl. Dep. 80-81; Cooley Dep. 19, 27-28).[4]

18. There were no available jobs within the company that plaintiff wanted that required less travel, and during some periods of time freezes were in place that would have prevented plaintiff from transferring out of his position (Pl. Dep. 78-79, 82-84, 130-31).[5]

---

[4]Plaintiff responded to defendants' SOF No. 16 (Finding of Fact ¶ 17) by stating: "Plaintiff knew there would be 'some travel' as a VFSE, the amount of which varied." This response does not controvert the essential fact asserted in SOF No. 16, that plaintiff knew he had to travel as a VFSE. This fact is deemed admitted.

[5]Plaintiff responded to defendants' SOF No. 17(Finding of Fact ¶ 18) by stating: "Plaintiff was not aware of any other jobs within the 'company' in part because he did not have access to the online job posting system and was told there was a freeze on his group, preventing him from transferring out of the VFSE Group." Plaintiff cites his deposition testimony at pages 78-79, 82-84 and 130-131, the same pages cited by defendants. Plaintiff's testimony does not controvert the essential fact asserted in SOF No. 17: There were no available jobs within the company that plaintiff wanted, that required less travel. This statement of fact is deemed admitted. Plaintiff testified he did not look for another job within the company because he "was busy doing this and in the hospital" and "we were on a freeze." Pl. Dep. 79, ll. 1-10. Plaintiff testified the freezes "were on and off." Id., ll. 11-16. Plaintiff did not testify that there were available jobs he wanted but could not take because of a freeze. Chris Cooley testified that he "did not recall a freeze stopping [plaintiff] from moving." (Cooley Dep. at 42). Plaintiff also testified there were no other jobs in his Career Path in St. Louis, although there were jobs outside of St. Louis, id. at 80, ll. 2-9, but he did not consider or apply for those jobs because he only wanted a job in St. Louis and was not willing to move. Id. at 81, ll. 22-25. Plaintiff also testified that while he was hospitalized and on disability he did not have access to "the Career Path or any of [SBC's] computer stuff," but he did have such access while he was actively working for the company in 2008 and 2009. Id. at 83, ll. 2-16. Plaintiff testified he didn't recall if there were any available positions that had the regular hours he was looking for without travel requirements, id., ll. 17-21, Pl. Dep. 130, ll, 2-12, and didn't recall applying for any positions within the company while he was a VFSE. Pl. Dep. at 84, ll. 7-23.

19.  In August 2009, plaintiff was temporarily reassigned to a short-term inventory project that allowed him to work in St. Louis for a period of several months without traveling (Cooley Dep. 66-68; Performance Improvement Plan, Ex. E to defendants' Statement of Uncontroverted Material Facts ("SUMF")).

20.  The short-term inventory project was important for the VHO operation nationwide and was headed by a different manager, Tim Shaughnessy, who was located in St. Louis.  Plaintiff was assigned to the project because he was in St. Louis (Cooley Dep. 72-73).

21.  On or about December 2, 2009, plaintiff received a Performance Improvement Plan ("PIP") because his job performance was below Cooley's expectations, including with respect to the short-term inventory project (Pl. Dep. 94, 116-18, 130; Cooley Dep. 67-68, 74-75; Performance Improvement Plan, Ex. E to SUMF).

22.  The PIP stated:

### Consequences

Immediate and sustained improvement around the items referenced in the section above will result in the cessation of the plan on **January 29, 2010**.  If required improvement is not achieved and sustained  by this date, disciplinary action up to and including dismissal may occur.

(Pl. Dep. 158; Ex. E to SUMF).

23.  On December 18, 2009, plaintiff drove himself to the hospital and was admitted for five days.  Plaintiff testified that he did so because he had "another breakdown with the A1C levels and the electrolytes" as a result of his diabetes (Pl. Dep. 155, 161-62, 180-90; Charge of Discrimination, Ex. F to SUMF).  Social Security Administration ("SSA") records from Mercy Hospital St. Louis, and the SSA Notice of Decision in plaintiff's Social Security disability case, however, state that plaintiff arrived at the emergency room "actively suicidal" with a plan to shoot himself on his boat,

and complaining of "severe depression secondary to overwhelming psychosocial stressors" including that "AT&T is going to fire me after 30 years, a divorce after 30 years of marriage and I could not figure out how to stop the train." (Ex. G to SUMF; Notice of Decision, Ex. K to SUMF). At the hospital, plaintiff was diagnosed with major depressive disorder and assessed a Global Assessment of Functioning ("GAF") score of 25, and was admitted and treated with individual psychotherapy, group therapy, medications and inpatient milieu. He responded well and his symptoms were stabilized. (Excerpt from SSA records (Mercy Hospital St. Louis record), Ex. G to SUMF; Notice of Decision, Order of Admin. Law Judge at 5, Ex. H to SUMF).[6]

24. After his five-day hospital stay in December 2009, doctors recommended that plaintiff undergo a five-week outpatient treatment (Pl. Dep. at 162). Following his hospitalization in December 2009, plaintiff requested and was placed on short-term disability leave for six months, beginning December 25, 2009 through June 6, 2010 (Pl. Dep. 146-50; AT&T Integrated Disability Service Center Letter, Ex. H to SUMF).

---

[6]Plaintiff's deposition testimony that his hospitalization in December 2009 was caused by his diabetes and not by depression or suicidal thoughts (Pl. Dep. 178-82, 187-90) is blatantly controverted by hospital and SSA records and documents on which his SSA finding of disability was based. As a result, the Court does not accept plaintiff's testimony on this point for purposes of summary judgment and instead relies on the records. See Scott v. Harris, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); Coker v. Arkansas State Police, 734 F.3d 838, 841 (8th Cir. 2013) (on summary judgment, district court correctly relied on police car's dash-camera recording to resolve factual dispute between the parties and reject plaintiff's claim that he did not run after falling off his motorcycle). Further, plaintiff's testimony that he does not remember telling hospital personnel that he was depressed and suicidal does not create an issue of material fact (Pl. Dep. 180-82, 187-90). "An assertion that a party does not recall an event does not itself create a question of material fact about whether the event did, in fact, occur." To v. U.S. Bancorp, 651 F.3d 888, 892 n.2 (8th Cir. 2011).

25.  Plaintiff testified that during the time he was on short-term disability, he "pretty much wasn't worried" about the possibility of termination, as he was "more worried about having to go back to work under the same conditions and having something seriously happen health-wise like the doctors stated."  (Pl. Dep. 158-59).

26.  After December 18, 2009, plaintiff did not perform any work as a VFSE (Pl. Dep. 163).

27.  In April 2010, while on short-term disability leave, plaintiff returned to the emergency room "feeling suicidal secondary to increased depression" with a plan to take a whole bottle of Flexeril or to shoot himself.  Plaintiff reported "symptoms including severely depressed mood; impaired attention and concentration; racing thoughts; severe anxiety resulting in gastrointestinal distress; lack of motivation; feelings of helplessness, hopelessness, worthlessness and guilt; and an inability to keep with his hygiene like he should."  Plaintiff was diagnosed with major depressive disorder, assessed a GAF score of 35 and admitted.  After inpatient treatment, he stabilized and was discharged a few days later.  (Social Security Disability ("SSDI") Award at 5, Ex. K to SUMF).

28.  On the evening of June 9, 2010, plaintiff submitted his resignation of employment, which states in part, "At this time I am submitting my resignation of employment with AT&T. Effective 6/9/2010."  (Pl. Dep. 147-49, 167; Resignation Letter, Ex. I to SUMF).

29.  Plaintiff's resignation was effective June 10, 2010 (Pl. Dep. 149, 169-70; Plaintiff's Severance Request, Ex. J to SUMF).

30.  Plaintiff voluntarily resigned based on his doctor's advice that he could no longer work as a VFSE without the risk of serious health consequences (Pl. Dep. 159-60).

31.  No one at SBC told plaintiff he should resign or retire (Pl. Dep. 159-60).[7]

---

[7]In response to defendants' SOF No. 25 (Finding of Fact ¶ 31), but clearly intended to be responsive to defendants' SOF No. 26, plaintiff stated, "No one at the company told him to quit, but

32. No one at SBC told plaintiff he could not return to work (Pl. Dep. 159-60).[8]

33. No one at SBC said anything negative about plaintiff's diabetes (Pl. Dep. 135).[9]

34. Plaintiff was first eligible for retirement benefits on June 10, 2010, the day his resignation became effective, and he received a lump sum retirement benefit (Pl. Dep 167).

35. In July 2010, after plaintiff had resigned, he asked for a two-year severance package in order to offset the increase in his monthly costs for benefits in retirement (Pl. Dep. 168-70; email of July 26, 2010 from plaintiff to Lori L. Minnis, Ex. J to SUMF).

36. Plaintiff's request for a severance package was denied, and he filed a charge of discrimination with the Missouri Commission on Human Rights on December 6, 2010 (Charge of Discrimination, Ex. F. to SUMF).

37. On August 29, 2011, plaintiff applied for Social Security Disability Income benefits through the Social Security Administration (Pl. Dep. 49), alleging disability based on diabetes, post-traumatic stress disorder, lower back pain, anxiety, depression and bipolar disorder (SSDI Award at 4, Ex. K to SUMF). The SSA found that plaintiff had the following "severe impairments: anxiety, diabetes mellitus, and bipolar with psychosis" (SSDI Award at 3).

---

Plaintiff was under direct threat of termination, per his performance improvement plan." Plaintiff's response does not controvert the essential fact asserted by SOF No. 26, that no one at SBC told plaintiff he should resign or retire. This fact is deemed admitted.

[8]In response to defendants' SOF No. 27 (Finding of Fact ¶ 32), plaintiff incorporated his prior response, "No one at the company told him to quit, but Plaintiff was under direct threat of termination, per his performance improvement plan." Plaintiff's response does not controvert the essential fact asserted by SOF No. 27, that no one at SBC told plaintiff he could not return to work. This fact is deemed admitted.

[9]In response to defendants' SOF No. 28 (Finding of Fact ¶ 33), plaintiff stated, "Plaintiff was put on a performance improvement plan because his condition was affecting his performance, so by virtue of criticizing his performance, he was being criticized for his condition." Plaintiff's response is not supported by a citation to the record. This self-serving and unsupported assertion does not controvert SOF No. 28, which is deemed admitted.

38.  In connection with his SSDI application, plaintiff asserted "difficulty lifting, squatting, bending, standing, walking, sitting, kneeling, remembering things, concentrating, completing tasks, understanding, following instructions, handling stress and getting along with others." (SSDI Award at 4, Ex. K to SUMF).

39.  On October 2, 2012, the SSA issued a "fully favorable" decision, and determined that plaintiff was totally disabled as of December 10, 2009, under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act(Pl. Dep. 49-51; SSDI Award at 8, Ex. K to SUMF).

40.  The SSA Administrative Law Judge determined that plaintiff has been disabled under the Social Security Act since December 10, 2009, because he "is limited in maintaining his concentration and attention on work tasks, tolerating the normal stresses and pressures of working, and completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods, breaks and absences." (SSDI Award at 4, Ex. K to SUMF).

**IV.  Discussion**

A.  <u>Plaintiff is Not Judicially Estopped from Asserting an MHRA Disability Claim Based on Receipt of SSDI Benefits</u>

As a threshold argument, defendants assert that plaintiff's claims are barred by judicial estoppel, because he made sworn statements to the Social Security Administration that he has been unable to work since December 10, 2009, which contradict his claim under the MHRA that he can work.  Defendants state that plaintiff applied for SSDI claiming he was totally disabled and unable to work due to diabetes, PTSD, lower back pain, anxiety, depression, and bipolar disorder, and that the Administrative Law Judge determined plaintiff was disabled under the Social Security Act since December 10, 2009.

Defendants cite <u>Cleveland v. Policy Management Systems Corp.</u>, 526 U.S. 795 (1999), in which the Supreme Court held that a "plaintiff's sworn assertion in an application for disability benefits that she is, for example, 'unable to work' . . . negate[s] an essential element of her ADA case [the ability to perform the essential functions of her job with or without reasonable accommodations] – at least if she does not offer a sufficient explanation," <u>id.</u> at 805-06; and <u>Moore v. Payless Shoe Source, Inc.</u>, 187 F.3d 845, 847 (8th Cir. 1999) (When a plaintiff has previously issued a sworn statement that asserts a "total disability," a court "should require an explanation of any apparent inconsistency with the necessary elements of an ADA claim.")

Plaintiff responds that judicial estoppel does not apply because his representations to the SSA are not inconsistent with his claims in this action, because his representations to the SSA "happened well after the MHRA violations of the Defendants which caused him to be constructively terminated." Pl.'s Mem. Opp. at 6. Plaintiff also asserts that the basis of his disability, as determined by the SSA, was actually caused by the defendant's violations of the MHRA that resulted in his termination. Plaintiff contends that under these circumstances, he would derive no unfair advantage if he is not estopped. Plaintiff does not submit any affidavits or evidence in support of his arguments.

The SSDI program provides benefits to a person with a disability so severe that he is "unable to do [his] previous work" and "cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." <u>Cleveland</u>, 526 U.S. at 797 (quoting § 223(a) of the Social Security Act, as set forth in 42 U.S.C. § 423(d)(2)(A)). The Supreme Court held, however, that a person who applies for or receives Social Security disability benefits is not automatically barred from suing an employer under the Americans with Disabilities Act. To successfully maintain such an action, an ADA plaintiff must "offer a sufficient explanation" for the "apparent contradiction"

13

between the sworn assertion in an application for disability benefits that he is unable to work, and the claim that he can perform the essential functions of his job, with or without reasonable accommodation. Id. at 806. "To defeat summary judgment, [the plaintiff's] explanation must be sufficient to warrant a reasonable juror's concluding that, assuming the truth of, or the plaintiff's good faith belief in, the earlier statement, the plaintiff could nonetheless 'perform the essential functions' of [his] job, with or without 'reasonable accommodation.'" Id. at 807.

The instant case asserts a claim under the Missouri Human Rights Act, not the ADA. The Missouri Supreme Court has held that "Missouri's discrimination safeguards under the MHRA . . . are not identical to the federal standards and can offer greater discrimination protection." Daugherty v. City of Maryland Heights, 231 S.W.3d 814, 819 (Mo. 2007) (en banc). While Missouri courts are guided by federal employment discrimination case law that is consistent with Missouri law, id., if the language of the MHRA provision is "clear and unambiguous, then federal caselaw which is contrary to the plain meaning of the MHRA is not binding." Id. at 819-20 (quoted case omitted).

In a diversity case such as this, the law declared by the state's highest court is binding on this Court. Washington v. Countrywide Home Loans, Inc., 655 F.3d 869, 873 (8th Cir. 2011) (citing Erie Railroad v. Tompkins, 304 U.S. 64 (1938)). See also Eubank v. Kansas City Power & Light Co., 626 F.3d 424, 427 (8th Cir. 2010) ("When determining the scope of Missouri law, we are bound by the decisions of the Supreme Court of Missouri. If the Supreme Court of Missouri has not addressed an issue, we must predict how the court would rule, and we follow decisions from the intermediate state courts when they are the best evidence of Missouri law.").

Defendants did not cite any Missouri case law in support of their judicial estoppel argument, and rely solely on federal cases under the ADA. The Missouri Supreme Court does not appear to have addressed the issue, but the Missouri Court of Appeals has consistently held that a plaintiff's

14

receipt of SSDI benefits does not preclude a determination that he is covered under the MHRA. See, e.g., Lomax v. DaimlerChrysler Corp., 243 S.W.3d 474, 481 (Mo. Ct. App. 2007) (reversing summary judgment for the employer that was based on plaintiff's receipt of SSDI benefits; finding a genuine issue of fact existed as to whether plaintiff had a disability within the meaning of the MHRA); Egan v. Craig, 967 S.W.2d 120 (Mo. Ct. App. 1998) (same); Daffron v. McDonnell Douglas Corp., 874 S.W.2d 482, 487 (Mo. Ct. App. 1994) (same; finding a genuine issue of fact existed as to whether plaintiff was capable of performing his job duties even though he received SSDI benefits, where plaintiff submitted an affidavit stating he was capable of and was actually performing his job duties up until the day of his layoff, and that his layoff caused him severe depression which was a major aspect of his total disability).

In Lomax, the court specifically declined to follow the Supreme Court's Cleveland analysis, and refused to apply estoppel principles to bar an MHRA disability discrimination claim where the plaintiff had been receiving disability benefits from a third-party entity. The court stated it had previously addressed the receipt of disability benefits under the MHRA in Daffron v. McDonnell Douglas, and held therein that receipt of benefits was not "dispositive of the issue whether [a plaintiff] is or was capable of performing his job duties. At most, a statement in [plaintiff's] application or in his deposition regarding his ability to work would be an evidentiary admission subject to explanation or impeachment by other evidence at trial." Lomax, 243 S.W.3d at 482 (quoting Daffron, 874 S.W.2d at 487).

In Daffron, the plaintiff received SSDI benefits after he was laid off from work, and the employer argued that because plaintiff admitted to becoming totally disabled since the date of the layoff, it was impossible to "reasonably accommodate" a person who was totally disabled to the point he could not perform any "substantial gainful work." Daffron, 874 S.W.2d at 486. The

plaintiff in <u>Daffron</u> submitted an affidavit stating he was capable of performing his job duties and was in fact performing those duties up until the day he was laid off, and that the termination itself caused him severe depression, which was a "major aspect to his total disability." <u>Id.</u> Based on this evidence, the court concluded there was a genuine issue of material fact as to whether the plaintiff was capable of performing his job duties at the time of his layoff, even though he filed an application for total disability benefits. <u>Id.</u>

The court in <u>Daffron</u> stated that the defendant employer did not argue that the SSA determination of total disability collaterally estopped the plaintiff from claiming in his MHRA case that he could perform the duties of his job. Nonetheless, the court concluded in dicta that the plaintiff's application for SSDI was not dispositive of the issue whether he was capable of performing his job duties. <u>Id.</u> at 487. The court also posited that even if the plaintiff admitted he agreed with the SSA's determination that he met the requirements for total disability, such an admission would not entitle the employer to summary judgment in light of plaintiff's testimony that he was capable of performing the duties of his job at the time he was laid off, and that the layoff caused his severe depression that was a major factor in his total disability. <u>Id.</u> at 488.

In <u>Egan</u>, 967 S.W.2d 120, the court squarely held that an MHRA disability discrimination plaintiff was neither collaterally nor judicially estopped under Missouri law by the receipt of SSDI benefits. The court concluded that collateral estoppel did not apply because the issue presented in the Social Security administrative proceeding, i.e., whether plaintiff was "disabled," was not identical to the issue of whether plaintiff had a "handicap" for purposes of the MHRA, and that the "fundamental focus" of the two issues was different. <u>Id.</u> at 124-26.

With respect to judicial estoppel, the court stated that under Missouri law the doctrine "holds that a person who states facts under oath during the course of a trial is estopped to deny such facts

in a subsequent suit." Id. at 126. The court noted it had declined to apply judicial estoppel to statements made on state and federal tax forms signed under penalty of perjury, because they were not made under oath during the course of a trial. Id. (citing Bellinger v. Boatmen's Nat'l Bank of St. Louis, 779 S.W.2d 647, 651 (Mo. Ct. App. 1989)). The court declined to apply judicial estoppel to the plaintiff's MHRA claim because, although plaintiff signed the SSA disability report under penalty of perjury, "the statements were likewise not made under oath in a judicial proceeding." Egan, 967 S.W.2d at 126. In addition, the court found that application of judicial estoppel was not appropriate because under the particular facts of the case, the plaintiff did not appear to be "attempting to impugn the integrity of the courts," id., or "playing fast and loose with the courts." Id. at 127.[10]

In the absence of Missouri Supreme Court precedent, the Court finds that the foregoing Missouri Court of Appeals decisions are the best evidence of what the Missouri Supreme Court would rule on this issue. Based on the holdings of Lomax, Daffron and Egan, it appears the Missouri courts will not readily find that an MHRA disability discrimination plaintiff is judicially estopped by receipt of SSDI benefits, and characterize the issue as an evidentiary matter for the jury. See Lomax, 243 S.W.3d at 482. In each of the three relevant cases, summary judgment for the employer based on the plaintiff's receipt of disability benefits was reversed. In the absence of any discussion of these cases by the defendants or argument that plaintiff is estopped under Missouri law, as opposed to federal law, because he received SSDI benefits, the Court concludes that

---

[10]The plaintiff in Egan suffered from multiple sclerosis ("MS") which left him unable to perform the job he held for almost twenty years. Shortly after plaintiff was diagnosed his doctor informed him that he was unable to work and plaintiff applied for disability benefits. Thereafter, primarily because of the "fluctuating character" of MS, plaintiff recovered to the point that his doctor released him to work with restrictions. Plaintiff then notified the SSA of his attempts to find employment, as required by SSA rules. Egan, 967 S.W.2d at 126-27.

plaintiff's MHRA disability discrimination claim is not barred by judicial estoppel. This aspect of defendants' motion for summary judgment should therefore be denied.

B. <u>Plaintiff Cannot Establish a Prima Facie Case of MHRA Disability Discrimination</u>

Defendants also move for summary judgment on the merits of plaintiff's claim. To establish a prima facie case of MHRA disability discrimination, a plaintiff must show that: (1) he is legally disabled within the meaning of the MHRA; (2) he was discharged; and (3) the disability was a factor in his discharge. <u>Hervey v. Missouri Dep't of Corrections</u>, 379 S.W.3d 156, 160 (Mo. 2012) (en banc).

Defendants argue that plaintiff cannot establish a prima facie case because (1) he does not meet the definition of "disability" under the MHRA because his diabetes interfered with his job duties and there was no reasonable accommodation available; (2) plaintiff was neither discharged nor constructively discharged; and (3) even if plaintiff had been constructively discharged, his disability was not a factor in the discharge. Plaintiff responds that there are genuine issues of material fact as to each element of the prima facie case.

The Court will address each of defendants' arguments in turn.

*1. Plaintiff is Not "Disabled" Within the Meaning of the MHRA*

The MHRA defines "disability" as a "physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job . . . ." Mo. Rev. Stat. § 213.010(4) (2000). <u>See also</u> <u>Medley v. Valentine Radford Commc'ns, Inc.</u>, 173 S.W.3d 315, 320-21 (Mo. Ct. App. 2005) ("[I]n order to be disabled under the MHRA, a person must have an impairment that limits a major life activity

and with or without reasonable accommodation that impairment must not interfere with performing a job.")

The parties do not dispute that plaintiff's diabetes is a disability within the meaning of the MHRA.[11] The first issue is whether plaintiff's diabetes interfered with performing his job, with or without reasonable accommodation. To avoid summary judgment, plaintiff must present sufficient evidence that he was capable of performing his job as a VFSE, because the MHRA definition of "disability" provides that an MHRA-protected impairment cannot "interfere with performing the job . . . in question." Mo. Rev. Stat. § 213.010(4); see Daugherty, 231 S.W.3d at 822. "The MHRA protects employees from disability discrimination for a disability that is 'unrelated to a person's ability to perform the duties of a particular job or position' and that 'does not substantially interfere with a person's ability to perform the essential functions of the employment' at issue." Daugherty, 231 S.W.3d at 822 (quoting Mo. Code Regs. Ann. tit. 8 § 60–3.060(1)(F)).

The Missouri Supreme Court has instructed that in determining whether a particular job function is "essential," courts may consider evidence concerning the following factors:

> (1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before the employer began advertising or interviewing for the position; (3) the amount of time on the job spent performing the function; (4) the consequences of not requiring the employee to perform the function; and (5) the past or current work experience of employees in similar jobs.

Daugherty, 231 S.W.3d at 822 (citing 29 C.F.R. section 1630.2(n)(3)).

Defendants argue that plaintiff does not meet the MHRA definition of disability because his diabetes interfered performing his VFSE job, and there was no reasonable accommodation available.

---

[11]Although plaintiff's favorable SSDI determination was based on both mental (anxiety, bipolar disorder with psychosis) and physical (diabetes) disabilities, plaintiff's claims in this suit are based solely on his physical disability, diabetes.

Defendants argue it is undisputed that extensive travel was an essential function of plaintiff's job, stating the purpose of the VFSE position was to travel to newly-built video headend offices to provide necessary training, monitoring, inventory and inspections to the employees who would run, maintain and monitor the VHO. Defendants state that if the VFSEs did not travel to the VHOs to do this work, the VHOs could not operate and customers could not receive U-verse broadcasts. Defendants contend that no travel or less travel was not an option for this position and, as a result, there was no reasonable accommodation available that would have allowed plaintiff to perform his job without traveling.

Defendants argue that because plaintiff cannot demonstrate there was a reasonable accommodation available so that his diabetes would not interfere with his performance as a VFSE, he cannot meet the definition of "disability" under the MHRA, citing Medley, 173 S.W.3d at 324-25 (employee did not meet definition of disability under the MHRA when she could not perform essential function of job with or without a reasonable accommodation); Knutson v. Schwan's Home Service, Inc., 711 F.3d 911 (8th Cir. 2013) (employer was not required to eliminate essential functions of job or reassign existing workers to assist disabled employee as a reasonable accommodation under the ADA); and Hatchett v. Philander Smith College, 251 F.3d 670 (8th Cir. 2001) (elimination of essential job function is not a reasonable accommodation under the ADA).

Plaintiff responds that while the defendants contend travel was an essential function of his job, his duties were altered at one point to reduce the amount of travel required, and that "[a]ssignments were in fact available within the Plaintiff's position that did not require travel, therefore the claim that travel was an essential function of the Plaintiff's job is simply not true. Defendants have not and cannot show that altering Plaintiff's role within his job to reduce or eliminate travel is not a reasonable accommodation." Pl.'s Mem. Opp at 8.

Plaintiff's response is not supported by any citation to the record and is contrary to the undisputed facts. The Court finds that travel was an essential function of the VFSE position because the position was established for the purpose of providing training on location at newly built VHOs around the country, the VFSE function was highly specialized, there were only six VFSEs available to perform the function, the VFSEs were expected to travel extensively, and if the VFSEs did not travel to the VHOs, the defendants would not be able to provide U-verse service to their customers. See Daugherty, 213 S.W.3d at 822; 29 C.F.R. § 1630.2(n)(2)(i), (ii), (iii) (factors relevant to a determination whether a job function is "essential.").

It is undisputed that plaintiff became unable to perform the extensive travel that his VFSE position required. The Court must therefore determine whether any reasonable accommodation would have enabled plaintiff to perform the VFSE position. Under the MHRA, an employer has the duty to reasonably accommodate an employee's disability, but the burden is on the employee to establish that he could perform the job with reasonable accommodation. Medley, 173 S.W.3d at 321. Missouri administrative regulations with respect to reasonable accommodation provide:

(G) Reasonable accommodation means-

1. An employer shall make reasonable accommodation to the known limitations of a handicapped employee or applicant;
2. Accommodation may include:
   A. Making facilities used by employees readily accessible to and usable by handicapped persons; and
   B. Job restructuring, part-time or modified work schedules, acquisition or modification of equipment or devices, the provision of readers or interpreters and other similar actions; and
3. In determining whether an accommodation is reasonable, factors to be considered include, but are not limited to:
   A. The nature and cost of the accommodation needed;
   B. The size and nature of a business, including the number and type of facilities and the structure and composition of the work force;
   C. The good faith efforts previously made to accommodate similar disabilities; and

D. The ownership interest in the subject of the proposed accommodation including the authority to make the accommodation under the terms of any bona fide agreement such as a lease.

Mo. Code Regs. Ann. tit. 8 § 60-3.060(1)(G).

Under the MHRA, "an accommodation that imposes undue financial and administrative burdens or requires fundamental alterations is not reasonable." Lomax, 243 S.W.3d at 480 (citing Medley, 173 S.W.3d at 321). As a result, the MHRA does not require an employer to eliminate an essential function of a job to accommodate an employee's disability. See State ex rel. Sir v. Gateway Taxi Mgmt. Co., 400 S.W.3d 478, 489 (Mo. Ct. App. 2013) (to be disabled under the MHRA, the employee's impairment, with reasonable accommodation, must not impair his ability to perform the essential functions of the job) (citing Medley, 173 S.W.3d at 320; Mo. Code Regs. Ann. tit. 8 § 60-3.060(1)(F)); cf. Wells v. Shalala, 228 F.3d 1137, 1145 (10th Cir. 2000) (employer was not required to eliminate the essential job function of traveling as a reasonable accommodation under the ADA). Because frequent travel is an essential function of the VFSE position, the Court finds there is no reasonable accommodation that would have allowed plaintiff to travel less or to perform his job without traveling.

Plaintiff's unsupported assertion that his work duties were altered at one point to reduce the amount of travel misstates the facts. The undisputed facts are that plaintiff was temporarily reassigned to work on a short-term inventory project for VHO operations, outside of his normal VFSE job, which did not require travel because it could be done in one place and the manager heading it was located in St. Louis. Plaintiff has offered no evidence that a permanent inventory position not requiring travel was available. An employer does not have to make a temporary change in work duties permanent as a reasonable accommodation under the law, as this would be a fundamental alteration. See, e.g., Rehrs v. Iams Co., 486 F.3d 353, 358 (8th Cir. 2007) ("An

employer does not concede that a job function is 'non-essential' simply by voluntarily assuming the limited burden associated with a temporary accommodation, nor thereby acknowledge that the burden associated with a permanent accommodation would not be unduly onerous.") (brackets and quoted case omitted); Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 950 (8th Cir. 1999) (employer was not required to create a permanent position out of a temporary one as an accommodation); Hanlon v. Missouri Dep't of Health and Human Servs., 2012 WL 528316, at *4 (W.D. Mo. Feb. 17, 2012) ("An employer who offers a temporary accommodation does not thereby admit that offering the same as a permanent accommodation would be reasonable."; granting summary judgment on the plaintiff's ADA and MHRA disability discrimination claims).

Plaintiff concedes that he could not perform the VFSE job because of the required travel, but argues that defendants could have reasonably accommodated his disability by transferring him to a different position. Under the MHRA, however, a plaintiff must show that with or without accommodation he can perform the essential functions of his job in order to establish that he is disabled within the meaning of the statute. Sir, 400 S.W.3d at 489; Medley, 173 S.W.3d at 320; Mo. Rev. Stat. § 213.010(4).[12] Further, plaintiff's unsupported assertion that there were other jobs available he could have transferred into, that did not require extensive travel, is contrary to the undisputed facts. Plaintiff has not identified any available jobs he could have filled and was willing to take; plaintiff testified he did not apply for any other jobs. The Court has found no MHRA cases

---

[12]"[T]o be disabled under the MHRA, a person must have an impairment that limits a major life activity and with or without reasonable accommodation that impairment must not interfere with performing a job. [§ 213.010(4), Mo. Rev. Stat.]. This is the main difference between the MHRA and the ADA, which prohibits discrimination against a qualified individual with a disability. 42 U.S.C. § 12112(a) (1995). The MHRA makes the question of whether the job can be performed with or without reasonable accommodation a part of the test to determine whether an employee is disabled; not making reasonable accommodations is a type of discrimination under the ADA." Medley, 173 S.W.3d at 320.

addressing this point, but under federal anti-disability discrimination statutes, a plaintiff has the burden to show there was an available job for which he was qualified, and those decisions are instructive in the absence of Missouri precedent.[13] See, e.g., Treanor v. MCI Telecomms. Corp., 200 F.3d 570, 575 (8th Cir. 2000) (employer properly granted summary judgment on ADA failure to accommodate claim where plaintiff offered no evidence of any job she applied for or that was available); Franklin v. City of Slidell, __ F.Supp.2d __, 2013 WL 4547006, at *8 (E.D. La. Aug. 27, 2013) (employer is not required to find or create jobs for disabled employees under the ADA); Bey v. Shinseki, 2012 WL 4434651, at *3 (N.D. Ill. Sept. 20, 2012) (Rehabilitation Act plaintiff was required to prove there was an available position for which he was qualified in order to prevail on failure to accommodate claim).

Plaintiff cannot create a genuine issue of material fact on the first element of his prima facie case simply by arguing that his employer is a large company and people have moved around before, so surely he could have transferred to another job. See Pl.'s Mem. Opp. at 9. To create an issue of fact, plaintiff must proffer evidence that there was an available job for which he was qualified, but he has not done so. Plaintiff testified there were no other available jobs in his Career Path in St. Louis and that, although there were jobs available outside of St. Louis, he only wanted a job in St. Louis, was not willing to move, and did not apply for any other jobs. Finally, although plaintiff testified that "freezes" were in effect at times, he never identified any job that he wanted or applied for, much less a job that he was unable to take because of a freeze.

For these reasons, the Court finds that plaintiff has failed as a matter of law to establish the existence of a genuine issue of material fact as to the first element of his prima facie case, that he

---

[13]See Medley, 173 S.W.3d at 320.

has a "disability" within the meaning of the MHRA. The defendants are therefore entitled to summary judgment.

### 2. *Plaintiff Cannot Establish That He Was Constructively Discharged*

The second element of an MHRA disability discrimination case is that the plaintiff was discharged. <u>Hervey</u>, 379 S.W.3d at 160. Assuming for purposes of argument that plaintiff could establish he has a disability under the MHRA, defendants argue that plaintiff cannot establish he was discharged, or in this case constructively discharged, because plaintiff admits that he retired.

A claim for constructive discharge constitutes actionable discrimination under the MHRA. <u>Wallingsford v. City of Maplewood</u>, 287 S.W.3d 682, 685 (Mo. 2009) (en banc). "Constructive discharge occurs when an employer deliberately renders an employee's working conditions so intolerable that the employee is forced to quit his or her job." <u>Id.</u> at 686. "To effect a constructive discharge, the working conditions must be such that a reasonable person would find them intolerable." <u>Id.</u> (quoted case omitted). "A claim of constructive discharge requires more than a single incident; rather, the claim requires proof of a continuous pattern of discriminatory treatment." <u>Id.</u>; <u>see</u> <u>also</u> <u>Reed v. McDonald's Corp.</u>, 363 S.W.3d 134, 140 (Mo. Ct. App. 2012) (same).

Defendants first argue there is no evidence to suggest that a reasonable person would find the conditions of plaintiff's employment intolerable, as plaintiff admits no one ever said anything negative about his diabetes or took any actions that he believes showed any discriminatory animus toward him because he has diabetes. Defendants assert that instead of basing his constructive discharge claim on any alleged discriminatory treatment, plaintiff argues he was constructively discharged because he was treated the same as the other VFSEs when he was required to travel, and when he was placed on a performance improvement plan that threatened termination for performance deficiencies. Defendants contend that even though plaintiff's working conditions may

have been intolerable for him due to his diabetes, this does not establish that he was constructively discharged because he had diabetes. Defendants assert that requiring plaintiff to perform the essential functions of his job and meet performance expectations is not *discriminatory treatment* that can be the legal basis for a constructive discharge claim.

Plaintiff responds that his working conditions were intolerable because they caused him to be hospitalized multiple times and placed on short-term disability, and he was told by his doctor that he could die if he continued to work under those conditions. Plaintiff asserts that the defendants were aware of this and "could have reasonably foreseen that this situation would force him to quit." Pl.'s Mem. Opp. at 9.

Plaintiff cannot establish that he was constructively discharged, because there is no evidence that he was subjected to a continuous pattern of discriminatory treatment as required by Missouri law. See Wallingsford, 287 S.W.3d at 686. Plaintiff has presented no evidence that he was subjected to any discriminatory treatment because of his diabetes. The fact that plaintiff's diabetes prevented him from traveling, or that travel caused him serious physical and mental repercussions, is not discriminatory treatment by his employer. The fact that SBC placed him on a performance improvement plan is also not discriminatory treatment. See, e.g., Higgins v. Gonzales, 481 F.3d 578, 587 (8th Cir. 2007), abrogated in part on other grounds by Torgerson, 643 F.3d 1031 (recommendation that employee be terminated, without actual termination, was not an adverse employment action in a Title VII case); Jones v. Fitzgerald, 285 F.3d 705, 715 (8th Cir. 2002) (in action under 42 U.S.C. § 1983, employee did not suffer any material disadvantage in the terms of conditions of her employment as a result of an internal investigation into her alleged misconduct; although the employee "ultimately may have been disciplined, even terminated, for the alleged violations is immaterial because she resigned, thereby mooting the necessity of any disciplinary

action."); <u>Breeding v. Arthur J. Gallagher and Co.</u>, 164 F.3d 1151, 1159-60 (8th Cir. 1999), <u>abrogated in part on other grounds by</u> <u>Torgerson</u>, 643 F.3d 1031 (employee's feeling of being unfairly criticized in reprimands and poor performance evaluations was not so intolerable to a reasonable person as to provide a sufficient reason to quit or to support a constructive discharge claim under the ADEA, Title VII and MHRA); <u>Donnelly v. St. John's Mercy Med. Ctr.</u>, 635 F.Supp.2d 970, 994 (E.D. Mo. 2009) (poor performance evaluation and "final counseling" were not adverse employment actions to form basis of ADA discrimination claim).

Plaintiff also cannot establish that the defendants deliberately rendered his working conditions so intolerable he would be forced to quit. Plaintiff testified that his working conditions were similar to those of other VFSEs, no one ever made a negative comment about his diabetes, he was approved for six months of short-term disability leave as requested, no one from the company told him to retire or that he could not return to work after his disability leave, and he chose to resign after his doctor told him he could no longer work as a VFSE without the risk of serious health consequences. Under these facts there is no constructive discharge.

The Court finds support for this conclusion in <u>Gamber v. Missouri Department of Health and Senior Services</u>, 225 S.W.3d 470 (Mo. Ct. App. 2007), a MHRA disability discrimination case in which the plaintiff alleged constructive discharge. In <u>Gamber</u>, the trial court granted a directed verdict in the employer's favor. The court of appeals affirmed, holding the plaintiff failed to establish that her working conditions were intolerable or that her employer intended to force her to quit, even though plaintiff contended her supervisor induced her to accept a job that required a three-hour daily commute on the promise that plaintiff would later be transferred to a closer office; the supervisor broke that promise and hired other persons while plaintiff was on leave undergoing treatment for cancer, and then wrote a negative performance evaluation and placed plaintiff on

27

probation when she returned from leave–which rendered plaintiff ineligible to transfer to other positions–and implied that plaintiff would never be given a transfer. The plaintiff resigned and filed suit, alleging constructive discharge because the three-hour commute that she had since she first took the job became intolerable when she lost the promised transfer and it was implied she would never be transferred. The Missouri Court of Appeals concluded that no adverse action had been taken against the plaintiff because her working conditions had not changed since she was hired, and that she was not constructively discharged because her working conditions were not intolerable and there was no evidence the employer wanted her to quit.

Similar to the situation in Gamber, plaintiff Noel decided he was unable to continue to work under the conditions of his job that required extensive travel, and resigned. As in Gamber, the conditions of plaintiff's VFSE job were not intolerable to a reasonable person as a matter of law, and there is no evidence the defendants deliberately made plaintiff's work conditions intolerable so that he had to quit. See also Tenkku v. Normandy Bank, 348 F.3d 737, 742-43 (8th Cir. 2003) (a negative performance review and a six-month probationary period imposed seven weeks before employee's resignation was not evidence of employer's plan to force employee to quit in a Title VII and MHRA case); Johnson v. Runyon, 137 F.3d 1081, 1082-83 (8th Cir. 1998) (per curiam) (where plaintiff chose voluntary early retirement after being told he would not be selected for a newly created position, he did not suffer an adverse employment action in an ADEA case).

Plaintiff cannot establish constructive discharge because he cannot show that the conditions of his job were intolerable to a reasonable person, that he was subjected to a continuous pattern of discriminatory treatment because of his disability, or that the defendants deliberately rendered his working conditions so intolerable he was forced to quit. As a result, plaintiff fails to establish the

second element of his prima facie case of MHRA disability discrimination, and defendants are entitled to summary judgment.

Because the Court concludes that plaintiff cannot show constructive discharge, it does not reach defendants' argument that plaintiff cannot show the third element of his prima facie case, that his disability was a contributing factor in his constructive discharge. The Court also does not reach defendants' arguments that they articulated a legitimate, non-discriminatory reason for plaintiff's discharge and plaintiff has no evidence of pretext, and that defendant AT&T Corp. is entitled to summary judgment because it was not plaintiff's employer.

## V.  Conclusion

For the foregoing reasons, the Court finds that defendants' motion for summary judgment on plaintiff's MHRA disability discrimination claim in Count II should be granted. Although plaintiff's MHRA claim is not judicially estopped as a result of his receipt of Social Security disability benefits, the Court concludes that defendants are entitled to judgment because plaintiff cannot establish a prima facie case of disability discrimination in violation of the MHRA.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment is **GRANTED**. [Doc. 61]

An appropriate judgment will accompany this Memorandum and Order.



_____
**CHARLES A. SHAW**
**UNITED STATES DISTRICT JUDGE**

Dated this  _13th_  day of January, 2014.